[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution of a marriage of over 30 years brought by the plaintiff wife against the defendant husband. The parties were married in October of 1965. They have two children, one of whom is a minor, Kelly born in 1979, and the other, Sean born in 1975, has now reached adulthood and is attending St. Joseph's College in Philadelphia. Both parties have lived in Connecticut for more than a year prior to the institution of this action, and neither party has been the recipient of state, local or federal aid.
The marriage has broken down irretrievably with no hope of reconciliation. The cause of the breakdown appears to be the CT Page 6741 result of a number of factors including stress from financial problems, lack of trust because of the plaintiff's infidelity early in the marriage and the defendant's drinking at least in the wife's perception throughout the marriage and the lack of sufficient funds to satisfy the plaintiff. While the plaintiff sought to place the main cause of the divorce on the defendant's drinking, she had failed to mention that in her response to interrogatories in which she was asked for the cause of the breakdown. However, she did go to Alanon for several years so it seems to the court that whatever the extent of the plaintiff's drinking, in her perception it was to excess. The reason that no divorce action was brought before this other than an attempt in 1980 when the plaintiff was recovering from back surgery and apparently had some problem with prescription drugs was, it seems to the court, because the children were now of an age where constant daily care was not necessary and the plaintiff had inherited funds from her parents.
It appears to the court that the dissolution of this marriage of 30 years is not a case in which blame should be assessed. Consequently, this court finds this to be a no fault divorce.
Both parties had high school educations and both have had some college courses. The defendant attended two colleges for two years and the plaintiff attended Katherine Gibbs School from which she graduated with honors and also attended Housatonic Community College over a period of years earning over 30 credits on business administration.
Both parties have worked throughout the marriage. The plaintiff worked full time until her husband's brother's wife died in childbirth and the child was born brain damaged. The plaintiff then took care of the child for two years until her husband's brother decided that the child must be placed in an institution much against the plaintiff's wishes. Thereupon she returned to work and worked full time until the birth of their first child in 1975. She then went back to work on a part time basis with her parents taking care of the baby. When the second child was born in 1979, she left work and did not return until 1990 when she took the position she presently has as secretary of the Trumbull Board of Education. At this position she now earns $405.18 a week gross.
In the early days of their marriage, they lived first with the plaintiff's parents in New Jersey and then in the same house CT Page 6742 as the defendant's mother and then they bought their own house. When the defendant obtained a job in Westport, Connecticut, they moved to Trumbull after selling their house in New Jersey and purchased the marital home in Trumbull.
The defendant is presently working for Prudential Securities and has worked for them for over 20 years. Initially, he had other jobs, moving from one job to another from time to time but always the move was for equal pay or for more pay. He has not been unemployed during the marriage. His income is $7,083.33 a month. In addition, he receives a bonus of $54,000.
Both parties have contributed to the education of both children. The plaintiff, in fact, went to work in order to pay for her son's tuition at Fairfield Prep. The defendant, on the other hand, has taken out a loan in the amount of $17,000 to pay for that same son's expenses at St. Joseph's College in Philadelphia. Plaintiff has also contributed to the tuition for the college, but the defendant is paying for the room and board. The remainder of the tuition is paid for by student loans which the son has obtained.
The tuition for St. Joseph's High School in Trumbull is being paid for by the plaintiff.
Over the years, both parties received inheritances from their parents: the defendant in 1979 received about $25,000 from his father's estate and the plaintiff in 1994 and 1995 received about $42,000 from her father's estate plus a half interest in a house which her father owned and the rent from that house until it was sold which amounted to some $3,000. She had also received some $25,000 from her mother's estate in 1990.
Nevertheless, in addition to the mortgage on the Trumbull home, they had also taken out a home equity loan to pay for remodeling the kitchen, putting on a porch and paying for vacations plus other incidentals.
At the present time, the parties' assets appear to be as follows: the marital home at 18 Firehouse Road, Trumbull, valued at $330,000 less mortgage and home equity loan of $188,306; federal and state tax refunds $5,781; defendant's checking and savings accounts $9,054; husband's cash surrender value life insurance $11,480; husband's security deposit on apartment $1,052; husband's 401K $15,379; husband's pension $63,650; wife's CT Page 6743 Fleet CD's $17,611; joint Fleet Bank Money Market $8,965; wife's checking account $63.00; wife's Chase Bank CD (listed as in trust for Kelly) $79,386; wife's ATT stock valued at $6,868; wife's cash surrender value life insurance $3,050; wife's pension plan $2,000 for a total combined assets of $345,533.
This action was brought in February of 1995, and the parties continued to live in the marital home until April of 1996. At that time, the defendant left because he said there was too much tension in the house and he moved to an apartment in Queens, New York, which has only a few pieces of furniture: a couch, a bed, a chair and no cable, chest of drawers or second bed or chair. There was a television set, however. The reason for his lack of furniture is that the plaintiff refused to allow him to take furniture from the house even though she had agreed that he could do so when he said he would move out.
At the present time, the defendant's living arrangement is not suitable either for him or for the children to visit him. Kelly is living with her mother at the marital home and completing her junior year at St. Joseph's High School in Trumbull. Her counsel urged that she be allowed to remain in the marital home until she completed high school.
Until the defendant left, he paid the household bills but afterwards, with the need to pay for this apartment, too, he missed some of the payments. However, the plaintiff had cashed in a joint CD in the amount of $23,000 and used it to pay living expenses which probably included the payments the defendant had been making.
Having considered all of the elements in § 46b-81, §46b-82 and § 46b-84, of the General Statutes, the court makes the following findings and orders.
1. The marriage, which took place in 1965, has broken down irretrievably with no hope of reconciliation and it is hereby dissolved.
2. There is one minor child issue of this marriage, Kelly, born in 1979 and presently a junior at St. Joseph's High School in Trumbull.
3. Neither of the parties is receiving or has received local, state or federal aid. CT Page 6744
4. Both parties have lived in Connecticut for at least one year prior to the institution of this action.
5. In accordance with the parties' agreement, the court orders that they have joint custody of the minor child, Kelly, and that visitation be arranged between Kelly and the defendant.
6. a. Because unallocated alimony and support appears to be agreed upon by the parties and also appears to be in the parties' best interests because of the amount of taxes that will be saved as set forth in the defendant's trial brief, the court orders the defendant to pay unallocated alimony and support in the amount of $3125 monthly plus 15 percent of the defendant's annual gross cash bonus upon its receipt until the marital house is sold or the plaintiff elects to pay the defendant the note and mortgage hereinafter provided.
 b. Once the house is sold or the plaintiff has elected to pay the defendant the note and mortgage hereinafter set forth, the amount of unallocated alimony and support shall be reduced to $2375 per month plus 30 percent of the defendant's annual gross cash bonus. This unallocated alimony and support shall be payable until the death of the defendant or the death, remarriage or cohabitation of the plaintiff.
7. To permit Kelly to live in the marital home until her graduation from high school and to avoid the payment of a capital gains tax, the defendant is ordered to transfer to the plaintiff all his right, title and interest in the marital home in Trumbull in return for the plaintiff's providing him with a note and mortgage in the amount of $71,000, representing one-half of the value of the equity in the home at the present time, payable on the sale of the house or the payment to the defendant of the note and mortgage hereinbefore provided and in any case no later than three (3) years from date, whichever occurs first.
8. The plaintiff shall be responsible for all of the carrying costs as well as the maintenance of the house and utilities from the date she receives alimony and support.
9. The other assets shall be divided equally as follows: the plaintiff may retain her Fleet CD, the Fleet joint money market account, her checking account, her Chase CD, the cash CT Page 6745 surrender value of her insurance and her pension. She shall also retain the AT T stock in her name. The defendant shall retain all the items in his name listed on his affidavit as well as $5,815 of the joint Fleet money market account, the plaintiff shall receive the balance thereof.
10. The parties shall share equally in the tax refunds which are in the plaintiff's possession.
11. The plaintiff shall transfer the 1987 Buick LeSabre to the defendant and the plaintiff shall retain the Toyota in her name.
12. The plaintiff shall make available to the defendant whatever items of furniture and personal effects the Family Relations officer recommends. If there is any dispute about the Family Relations officer's recommendation, the matter must be referred back to the court for decision.
13. Each party shall be responsible for the liabilities listed on his or her financial affidavit except for the VISA account in the amount of $8,000. Two-thirds of this account shall be the responsibility of the plaintiff and one-third shall be the responsibility of the defendant.
14. The defendant shall name the plaintiff beneficiary of his life insurance policy in the amount of $150,000 so long as he has a duty to pay alimony. He shall also name Kelly, the minor child, as beneficiary of life insurance in the amount of $50,000 until she has completed high school or reached the age of 19, whichever occurs first.
15. All household bills, including the mortgage, home equity, taxes, utilities, for the Trumbull house will be shared equally by the parties until payment of alimony begins. Thereafter, the plaintiff shall be solely responsible for these bills and shall hold the defendant harmless from any claim or demand therefrom.
16. Both parties shall include Kelly in their hospital and medical insurance and they will be governed by the provisions of § 46b-84 which provides in part as follows:
 . . . (1) the signature of the custodial parent or custodian of the insured dependent shall CT Page 6746 constitute a valid authorization to the insurer for purposes of processing an insurance reimbursement payment to the provider of the medical services, to the custodial parent or to the custodian, (2) neither parent shall prevent or interfere with the timely processing of any insurance reimbursement claim and (3) if the parent receiving an insurance reimbursement payment is not the parent or custodian who is paying the bill for the services of the medical provider, the parent receiving such insurance reimbursement payment shall promptly pay to the parent or custodian paying such bill any insurance reimbursement for such services. For purposes of subdivision (1), the custodial parent or custodian is responsible for providing the insurer with a certified copy of the order of dissolution or other order requiring maintenance of insurance for a minor child. Such insurer may thereafter rely on such order and is not responsible for inquiring as to the legal sufficiency of the order. The custodial parent or custodian shall be responsible for providing the insurer with a certified copy of any order which materially alters the provision of the original order with respect to the maintenance of insurance for a minor child. If presented with an insurance reimbursement claim signed by the custodial parent or custodian, such insurer shall reimburse the provider of the medical services, if payment is to be made to such provider under the policy, or shall otherwise reimburse the custodial parent or custodian. . . .
17. Wage execution shall be issued.
18. Counsel fees for counsel for the minor child are hereby approved and the parties are ordered to share equally in their payment.
19. Each party shall be responsible for his or her own attorney's fees. CT Page 6747
MARGARET C. DRISCOLL JUDGE TRIAL REFEREE